## Roberts, Master Commissioner, et al. v. Huddleston et al.

(Decided May 17, 1935.)

(As Modified on Denial of Rehearing June 14, 1935.)

J. E. WARREN and F. B. MARTIN for appellants.

STEVE WILEY for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is an appeal from a judgment of the Fulton circuit court, sustaining the defendant's general demurrer to the petition and petition as amended, in so far as it sought recovery upon a depository bond of deposits made prior to its execution, and dismissing same with costs upon plaintiff's declining to amend further.

The plaintiff having perfected his appeal from this judgment challenging the propriety of the court's construction of the bond, he here asks our review and determination of that one question.

The facts as gathered from the pleadings and exhibits (no proof having been taken) are that in January, 1928, at the beginning of the term of office of the circuit

judge for that judicial district, the appellant, George C. Roberts, was appointed master commissioner of the Fulton circuit court and duly executed bond as such. Also, at the same term of the court, an order was entered designating the Farmers' Bank of Fulton, Fulton county, Ky., "as a place of depository for moneys paid and received by the master commissioner," and providing that "such depository will execute bond in the sum of $10,000, conditioned as provided by the statute." For some cause not satisfactorily appearing in the record, the designated depository failed to execute the depository bond, as designated by the court's order, supra, and also as required by section 411, Kentucky Statutes, providing that:

"Such bank shall, before receiving the deposit, execute bond, with good sureties, to be approved by the court, in a penal sum to be fixed by the court, payable to the Commonwealth, and conditioned to pay all moneys deposited by the receiver or commissioner upon any check drawn by him under order of court."

Also, by section 412, it is made the duty of the commissioner "to receive into his custody and safely keep all moneys paid to him under order of court, and if any depository has been selected by the court, he shall, as soon as practicable, deposit such moneys therein."

It appears that this depository bond thus required by the statute to be executed, with good surety, by the depository bank upon its designation as such and before receiving deposit of the court's moneys, was never executed by the named depository until in January, 1931, or practically three years after its appointment. However, it is admitted, notwithstanding this dereliction on the part of the bank, that the appellant master commissioner had, immediately following the court's designation of the bank as depository of the court's moneys, begun and continued to deposit the court's moneys with it up until November 25, 1930, when the bank voluntarily closed its doors and surrendered its assets to the banking commissioner for liquidation. It is alo pleaded that at the time of the first closing of the depository bank, the appellant master commissioner had on deposit with it court funds amounting to some $11,000.

It further appears that, immediately following the bank's closing, its directors and officers undertook to

secure the banking commissioner's consent to its reopening, which was given upon the bank's complying with certain stipulated conditions as to deposit withdrawals (to which the master commissioner assented), when it was reopened on December 16, 1930.

It is both pleaded and argued in brief that much of the interest and zeal manifested by the officers and directors of the bank in reorganizing and reopening it was prompted by their desire, in such way, to procure protection from liability for having permitted its officers to receive deposits when (it is alleged) they knew the bank was insolvent, and for having depleted its assets, while operating as a depository without bond, by declaring dividends out of capital, rather than earnings, just prior to its closing. Whatever may be the merit and true facts as to these matters pleaded, it is admitted that the appellant commissioner co-operated with the appellee officers and directors of the bank in its efforts made to reopen, at least to the extent that he consented, as one of its depositors, to the conditions imposed by the banking commissioner for limited withdrawals of their deposit accounts over a period of months, and (it is alleged by reply) that, in consideration of such co-operation and consent given by the master commissioner, the said officers and directors of the bank agreed to secure payment of the commissioner's court funds by executing, as sureties for the closed depository bank as principal, the depository bond, which was required of it as the court's designated and acting depository. Accordingly, and pursuant to this agreement, at the following 1931 January term of the Fulton circuit court, the bank having reopened, they tendered into court for its approval and acceptance the following bond:

> "Know all men by these presents, that we, Farmers' Bank of the City of Fulton, Kentucky, a corporation created and existing under and by virtue of the laws of the State of Kentucky as Principal and Arch Huddleston, John C. Browder, I. H. Reed, A. G. Baldridge, Charles Brann, W. L. Willingham, A. M. Nugent, and Louis Weaks, as sureties, are held and firmly bound unto George C. Roberts, Master Commissioner of the Fulton Circuit Court in the sum of Ten Thousand ($10,000) Dollars lawful money of the United States, in payment of which sum well and truly to be made, the

said Principal and Sureties bind themselves, their successors, personal representatives and assigns, jointly and severally, firmly by these presents:

"Whereas, the said George C. Roberts, *has agreed with the obligors herein to deposit* in said Farmers' Bank moneys received by him as Master Commissioner of the Fulton Circuit Court:

"Now Therefore, the condition of this obligation is such that if the said principal, the Farmers' Bank of the City of Fulton, Kentucky shall faithfully account for and pay over on legal demand *all moneys deposited* with said Principal by or on behalf of the said George C. Roberts as said Master Commissioner, then this obligation is to be null and void, otherwise it is to remain in full force and effect and the obligors herein bind and obligate themselves, their successors, personal representatives and assigns, jointly and severally, to repay at once to the said George C. Roberts *the amount of money then on deposit* to him as such Commissioner, but not to exceed the amount of this bond, to-wit, $10,000, and upon such payment the obligors herein making same shall be subrogated to all the rights of the said obligee in and to said deposit, and said obligee is to execute whatever papers may be necessary to effect a transfer of his rights and interest in and to said deposit to the obligors herein making said payment to him.

"In witness whereof, the said Principal has caused its name to be subscribed hereunto by its duly authorized officer and its corporate seal affixed and said sureties have hereunto subscribed their names in person, this the 31st day of January, 1931." (Italics ours.)

This bond, so obligating the appellee sureties in the said penal sum to protect the commissioner's funds deposited in the depository bank, was upon its examination by the court approved and accepted by the following order:

"Fulton Circuit Court.
"Regular Term. 12th day, 31st day of January, 1931.
"In the Matter of Farmers' Bank:
"The court heretofore by an order duly entered designated the Farmers' Bank of Fulton, Ky. as

depository for funds collected and handled by George C. Roberts, Master Commissioner and requiring the said bank to execute a bond in the penal sum of Ten Thousand ($10,000) Dollars.

"Comes the said Farmers' Bank of Fulton, Ky. and tenders its bond with A. Huddleston, I. H. Reed, J. C. Browder, A. M. Nugent, Louis Weaks, Chas. Brann, A. G. Baldridge, and W. J. Willingham, surety, and which bond being examined by the court is approved and ordered filed and recorded. * * *''

After the execution and acceptance of this bond on January 31, 1931, it appears that the commissioner continued to deposit the court's funds with the said depository bank until October 14, 1931, when it again failed and went into final liquidation. At this time the appellant had on deposit with it the sum of $8,849.48, all of which (except $517.49) represented deposits made prior to the execution of the bank's depository bond in January, 1931 (the commissioner having, between the dates of the first and second closing of the bank, reduced the larger amount of its prior deposit account of some $11,-000, by withdrawing a part thereof under the agreed restricted withdrawal plan.)

Upon this second failure of the bank, the commissioner, for himself and for the use and benefit of the various parties interested in the funds thus deposited by him as commissioner, brought this action against the sureties on this depository bond to recover of them the amount of *his then deposit* account of $8,849.48, with interest thereon from October 14, 1931, the date of the bank's second closing.

The sureties answered, denying liability under the bond for any portion of the funds deposited prior to the execution of the bond, basing their defense upon their construction of the legal import and effect of the literal provisions of the bond; they further contended that they were not liable because the commissioner had agreed with them and the other depositors to a restricted withdrawal of the deposits before the bank's reopening in December, 1930, thus waiving the condition of the bond requiring it to pay "all moneys deposited" on legal demand.

A reply was filed detailing the preliminary negotia-

tions of the parties, and alleging that the same resulted in an agreement with the appellees to execute a depository bond securing the repayment of *all funds* deposited by appellant with the bank. A rejoinder followed denying such agreement.

These pleadings, to all of which demurrers were filed, completed the issues.

Upon submission of the cause upon this record, the court construed the bond sued upon as conditioned to repay, upon defalcation by the bank, only such of the deposits as were made after the execution of the bond, and adjudged that the defendants' demurrer to the petition and petition as amended should be sustained as to all deposits made prior to the execution of the bond in January, 1931, and overruled it as to deposits shown to have been made thereafter in the sum of $517.49, for which it awarded recovery to plaintiff.

Plaintiff having declined to plead further, his petition was to the extent stated dismissed with costs. Whereupon, having perfected his appeal, plaintiff, challenging the propriety of the trial court's construction of the bond, here seeks our review of that question.

Looking now to the determination of this question of what is the proper construction of this bond, which appellant contends has been erroneously interpreted by the trial court, it is first to be noted that, conceding that the bond executed by the depository bank is not conditioned as provided by the statute (section 411, Kentucky Statutes) pursuant to which it was directed made and that by reason of its falure to so conform with the statute it is not to be treated, nor is it sufficient, as a statutory bond, it nevertheless, even conceding its failure to measure up to the standard of the statutory requirements, may yet clearly be sufficient in its terms for evidencing a contractual obligation of the parties, so as to satisfy the requirements of a common-law bond, binding its makers according to the legal import and fair intendment of its terms.

Construing the bond, therefore, only as a common-law bond or as representing only a written contractual obligation of the parties, as such it is to be governed by the general rules of construction applicable to a written contract, which require that it be interpreted so as to give such force, effect, and meaning to all the

words and clauses used in the written instrument as effectuates the evident intention of the parties ascertained therefrom, and for which purpose the court may be assisted in such determination, where the terms employed are of ambiguous meaning, by receiving evidence as to the facts and circumstances surrounding the parties' execution of the bond which tend to clarify and better define the meaning and intention of the parties in their use of the words employed to express the objective of the instrument. Eastern Ky. Mineral & Timber Co. v. Swan-Day Lumber Co., 148 Ky. 82, 146 S. W. 438; Rosa v. Nava, 235 Ky. 547, 31 S. W. (2d) 910; Barrowina v. Charles, 234 Ky. 508, 28 S. W. (2d) 780.

To such end, where the terms employed are susceptible of a double intendment, resulting in conflicting contentions made as to what was the intended scope, meaning, and significance of the equivocal or ambiguous terms employed, the court may avail itself of the evidence as to what was the position and circumstances of the contracting parties when executing the instrument, with a view to more clearly ascertaining the objective and purpose of the makers of the instrument in using terms later found to be productive of conflicting interpretations.

It is to be noted that this action upon the bond makes no claim that its execution was procured by fraud or mistake, for which it asks modification of its terms, but seeks a recovery of the defendant sureties upon the bond as executed, contending that under a literal construction of the instrument as written, and a fortiori when explained by the facts and circumstances of the parties when executing it, he is entitled to recover the full amount of the deposited court funds held by defendant depository upon the latter's defalcation in "paying over, on legal demand, all moneys deposited."

These facts and circumstances alleged in the pleadings are that the defendant bank, upon being designated the depository of the court's funds, failed to execute the required bond to protect the deposit of same by the commissioner with it; that upon the later failure of the bank in November, 1930 (the bond never having been executed by it), in seeking to reorganize and reopen, the bank saw fit to undertake the delayed discharge of its duty and to then execute this bond in consideration of securing the commissioner's assistance and

cooperation in its efforts to reopen; and that it did under such circumstances, in January, 1931, some three years after its designation as depository, execute its bond, with its officers and directors, the appellees, as sureties thereon.

This bond provides, in terms and substance, that whereas the appellant commissioner had agreed "to deposit" with it, the court's funds received by him as such in this bank as its designated depository (and having at such time, it is shown, deposits so made with it to the amount of some $11,000), it is made the condition of the bond that should the said depository fail to "account for and pay over on legal demand *all moneys deposited*" with it, the said sureties would in such event pay over *"the amount of money then on deposit,"* to the commissioner not to exceed the amount of the bond ($10,000).

The appellees contend that this language in the bond created no liability against the bank and its sureties for the repayment of any deposits made by the commissioner with the depository, except for those made after the execution of the instrument.

We do not find any logical reason or supporting ground for this restricted construction of the wording and conditions employed in the bond, justifying the imposing of such limitation upon the extent of liability of its makers created by such terms. The bond not only does not expressly impose any of the limitations or restrictions of liability here contended for, but, on the other hand, it stipulates in hæc verba that in the event of the default by the bank to pay over on legal demand money deposited, they, as sureties, will repay at once "the amount of money then on deposit" to the commissioner.

Notwithstanding the various rules, both grammatical and technical, invoked and at length argued for giving the language of this bond the restricted construction contended for, we do not find the claim of the sureties to be either reasonable or meritorious, either when we are permitted to read the language of the bond and construe it either literally according to its own terms if found clear or, if when taken literally they be deemed of ambiguous import, to then construe them in the light of the circumstances under which used when the bond was executed. By the construction of the bond ap-

proved by us, we are not extending by implication the liability of the sureties beyond the fair intendment and meaning of the terms used by the contracting parties, when construed according to their fair and ordinary meaning, and even more conclusively is such clearly shown to be the meaning and effect of the controversial terms used where interpreted in the light of the circumstances here shown attending their use. Neither do we find ourselves in sympathy with the contention of appellees that, if equivocal rather than plain terms have been purposely chosen and employed by the appellees in making the instrument, the ambiguity so created by the alleged equivocal language employed should be available to the appellees to restrict and avoid a liability, voluntarily and properly assumed under the bond, when becoming a depository, to make a legal and rightful accounting for all funds received by their depository bank. Had the makers of the instrument wished to limit the extent of their suretyship and to contract a liability to account only for deposits made after the execution of the bond, they could have very easily, by fitting and appropriate language, clearly expressive of such intended limitations, have so provided by the conditions of the bond itself. However, having failed to venture the court's refusal and disapproval of a bond making such express limitation upon their liability assumed under a bond, proffered as one complying with the courts order that it be conditioned according to the statute, they cannot be heard to now claim, in derogation of the fair meaning of their language, chosen and employed by them in the bond, that such restriction of liability should by implication be now effected to relieve the makers of a rightful liability through a strained and forced construction of its terms.

The order of the court approving this bond, made after its examination, is clearly evincive of the court's then interpretation of it as representing the sureties' belated execution of an adequate bond such as they were required by its earlier order of January, 1928, to make to secure the bank's proper accounting for *all the funds* deposited with it by the commissioner, and should be taken and construed as meant and intended by them, its makers, to effect and meet in good faith the fair measure and conditions of liability of the depository bond required of them both by the statute and courts order.

Holding such view of the meaning and intention of the parties, and it being our conclusion that even under a literal construction of the terms and provisions of the bond there was created a contractual liability on the part of its makers to secure the repayment of all funds deposited with the depository bank by the commissioner, whether before or subsequent to the bond's execution (it having been its duty to execute bond conditioned so as to protect all deposits received), we are of the opinion that the trial court was in error in otherwise construing the liability of the appellee sureties assumed in the bond, as one limited only to securing the bank's repayment of deposits made after its execution. By reason of such error of the trial court we conclude its judgment based thereon must be reversed, with direction to overrule the demurrer to the petition.

Judgment reversed.