**J. M. INGRAM, Appellant,**

v.

**STATE PROPERTY AND BUILDINGS COMMISSION, Appellee.**

Court of Appeals of Kentucky.

Oct. 4, 1957.

Rehearing Denied Feb. 14, 1958.

Joseph R. Rubin, Louisville, Chat Chancellor, Frankfort, for appellant.

Jo M. Ferguson, Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., for appellee.

STEWART, Judge.

On January 11, 1950, appellant, J. M. Ingram, and one John F. Wilson, architects, entered into a written contract with appellee, State Property and Buildings Commission, for the performance of services consisting of the preparation of drawings and specifications for and the supervision of the construction of a student union building at Western State College in Bowling Green. The services were rendered and appellee paid the architects $24,000, the maximum fee provided for in the contract. On April 5, 1955, Wilson assigned all his interest in the contract to Ingram, and the latter thereafter filed a complaint against appellee wherein he alleged the architects were due the further sum of $11,032.47 for compensation earned in connection with the erection of the structure over and above the amount the architects have received.

The portions of the contract which control the disposition of this litigation read:

"Whereas, the Commonwealth intends to construct a student union building including the furnishing and installing of initial equipment for Kitchen and Cafeteria at Western Kentucky State College, Bowling Green, Kentucky, *at an estimated cost of Six Hundred Thousand Dollars ($600,000.-00), which estimated cost is the amount used for determining the Architects' fee,* with the understanding and agreement, that if the amount of the lowest legitimate bid or bids, for the completion of all of the work included in, and covered by this contract, is a lesser sum than the above estimated cost, then and in that event, the fee of the Architects is to be adjusted and the amount of the lowest legitimate bid or bids is to be used as the basis for establishing the final amount of the Architects' fee, and such payments as are made prior to such adjustment, shall be entered as credits in connection with such adjustments, *and it is further understood and agreed that the Ar-*

*chitects' fee is not subject to adjustment by reason of any higher bids received for the construction of the project or by reason of any change or addition within the scope of the contract.* The Architects' fee shall be based on the following schedule of Architect's fees, which schedule has been adopted by the Commonwealth as a standard for such fees, viz:

"6% of the basic or estimated (agreed) cost on sums up to $100,000.00 for all services, including supervision and inspection, as is provided in contract form.

"5% on sums of $100,000.00 to $400,000.00

"4% on sums of $400,000.00—Up

\* \* \* \* \* \*

"*Section 1.* The Architects agree to perform all professional architectural and engineering services as may be required by the Commonwealth for the proper preparation of complete drawings and specifications, and supervision of construction, pertaining to the above-named construction as hereinafter set forth." (Italics ours.)

The substance of the complaint is that requests by appellee for changes and additions in the construction work resulted in extra labor for the architects beyond the scope of the contract, in that a more elaborate and more expensive building was demanded contrary to the nature and size of the structure contemplated at the time of negotiation of the contract. The total cost of the finished project amounted to $693,453.95 and appellant claims 4% of this figure under the terms of the contract, less the $24,000 previously advanced to the architects. Furthermore, he alleges the architects are entitled to compensation for these items: For work expended on site grading, steps, retaining walls and the like around the building; for the preparation of plans and specifications on an additional floor which was not constructed; for the same character of services done in the installation of a sound equipment system in the building; and for certain other unspecified items of extra work performed on the structure.

The court below entered an order dismissing the complaint and from this ruling appellant has taken this appeal. The single issue on appeal is whether or not the facts as alleged in the complaint constitute a claim upon which relief can be granted.

Appellant's first argument is that the building originally contemplated by the parties at the time the contract was entered into was to enclose 20,000 square feet of floor space, whereas the completed structure, contrary to the parties' expectations and understanding, contains in excess of 34,000 square feet of floor space; and, since the contract is silent as regards the size the building was to be when completed, parol evidence should be resorted to to clarify the intentions of the parties on this point and a jury should be allowed to determine this issue when developed by proof. Also, appellant emphasizes his complaint set forth that the building which was finally erected was much different from and much larger than the one contemplated to be built and he asserts that such facts should be considered established, since the allegations in this respect were not controverted.

It is true the contract makes no mention of the number of floors to be built, or the square feet of space to be provided, or the type of architecture to be adopted, or the amount the building was to cost. In a broad general way the contract provides for the erection of "A Student Union Building". Although exact details are lacking, a careful reading of the contract can lead to no other conclusion but that at the time of its execution the architects bound themselves to plan a building which would ultimately meet with the approval of appellee, and, furthermore, they agreed to make such changes and additions as might be requested from time to time. The agreement also states that the architects

were to provide all professional, architectural, engineering and supervisory services as may be required by appellee for the completion of this structure; and the contract by a clear and express provision fixes the maximum fee they were to receive for all their services incident to the performance of the contract.

■ The question of whether or not recovery may be had for work performed outside a particular contract but rendered in connection therewith is dependent upon the proper interpretation of the agreement involved. However, if the services for which extra pay is claimed are included in those for which the agreed compensation is stipulated, no further recovery may be had. Foster v. Sellards, 263 Ky. 752, 93 S.W.2d 834; 17 C.J.S. Contracts § 364, p. 822. Appellant attempts to establish by lengthy argument that certain items of work admittedly performed by the architects in connection with the construction of "A Student Union Building" were "without the scope of the contract", but he makes no effort to show what kind of services were embraced "within it".

■ We conclude the contract provisions are plain and unambiguous and are more readily subject to the interpretation that they include the work done than to a finding that those services were not within the purview of the contract. The cases cited by appellant wherein he undertakes to show a different undertaking from that contracted for may be distinguished upon their facts and are not controlling. It is our opinion appellant agreed to furnish all the services necessary for the construction of the building, and we believe, too, that the services which he alleged constituted work beyond the terms of the agreement are by the express provisions of the contract within its scope and do not constitute a valid basis upon which to found his complaint.

■ Clearly the allegations contained in appellant's complaint conflict with the pro-

visions of the contract. These pleadings represent, for the most part, the erroneous conclusions of the pleader and the fact that they were not controverted is immaterial. It has been uniformly held by this Court that when a cause of action is founded upon a written contract which constitutes a portion of the pleading and the contract contradicts the allegations of the pleading, the provisions of the contract control. Shockey v. Pelfrey, 314 Ky. 441, 235 S. W.2d 1017; Dupre v. Hortsman, 238 Ky. 382, 38 S.W.2d 236. The contract in our view is susceptible only to the meaning we have advanced and the interpretation we have placed upon it nullifies appellant's allegations in conflict therewith.

Appellant further argues that the limitation fixing the architects' compensation by virtue of being within a so-called recital clause is in conflict with the provisions in the body of the contract and therefore does not govern the operative portions of the contract. He bases his interpretation of the provision as being a recital clause upon the beginning word "whereas" and cites to sustain his position the case of Jones v. City of Paducah, 283 Ky. 628, 142 S.W.2d 365, 367, wherein this Court said that a "whereas" clause is but an introductory or prefatory statement meaning "considering that" or "that being the case", and is not an essential portion to the construction of the contract.

■■ The contract in the Jones case involved a series of preliminary clauses setting out the reasons why the agreement was desirable to the parties. While it is admitted that such clauses as those contained in the contract in the Jones case are not essential in construing a contract, this Court has never held that the introduction of a portion of a contract containing a material provision by the word "whereas" automatically creates a nonessential recital clause. It has long been a rule of interpretation that a contract must be construed as a whole and such interpretation applied to the instant contract

precludes the finding that the clause in question is nonessential. Roberts v. Huddleston, 259 Ky. 595, 82 S.W.2d 469.

Appellee's argument that the State Property and Buildings Commission as a state agency may not be made a debtor by implication need not be considered. Since we believe the services rendered by appellant were clearly within the scope of the express contract, we need not determine whether the proof was such as to sustain an implied contract allegation.

Wherefore, the judgment is affirmed.