937 F.2d 609
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Morton SCHAFF, Barbara Schaff, Plaintiffs-Appellants,
v.
William H. STANHAGEN, Peter F. Mischler, John Forrest, Eric
Cummings, Individually and as partners of
Pinecrest Group Partnerships,
Defendants-Appellees.
 Nos. 90-6365, 90-6423.
 United States Court of Appeals, Sixth Circuit.
 July 15, 1991.
 
 Before RALPH B. GUY, JR. and DAVID A. NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 Plaintiffs, Morton and Barbara Schaff, appeal the district court's dismissal of their complaint. Plaintiffs brought this action against defendants William H. Stanhagen, Peter Meisinger, Edward Mischler, John Forrest, and Eric Cummings, individually and as the partners of Pinecrest Group Partnerships (Pinecrest), alleging breach of contract and fraud as to a letter agreement and a consulting agreement. On appeal plaintiffs raise three issues: (1) whether the district court improperly drew factual inferences in favor of defendants in interpreting the parties' intentions as embodied in the contracts; (2) whether the district court improperly took judicial notice of a state receivership proceeding; and (3) whether the court erred in concluding that plaintiffs' claims for fraudulent inducement did not state a viable legal theory.
 
 
 2
 Upon review, we conclude that there is no merit to the claims of error raised by the defendants and affirm.
 
 I.
 
 3
 In 1989, Morton Schaff was the Chief Executive Officer of Spectrum Resources, Inc. (Spectrum), a small oil and gas drilling and production company with operations in Kentucky, Ohio, and West Virginia. Spectrum was experiencing financial difficulties, and, during the summer of that year, Schaff, in an attempt to save the company, entered into negotiations with Pinecrest, a major creditor of Spectrum. These negotiations resulted in two written agreements--a letter agreement of August 23, 1989, and a consulting agreement of August 30, 1989. These agreements were accurately described by the district court.
 
 
 4
 Under the letter agreement, which was executed by plaintiff and defendant Stanhagen on behalf of Pinecrest, it was agreed: a) that plaintiff would resign as CEO of Spectrum--paragraph 1; b) that Spectrum and plaintiff would enter into a consulting agreement[,] with plaintiff receiving a stated annual salary--paragraph 2; c) that plaintiff would receive other cash payments from Spectrum--paragraphs 3, 4, 7; d) that plaintiffs would be held harmless on Spectrum's financial obligations--paragraphs 5, 6; e) that Pinecrest would have no obligations under the agreement if Spectrum entered bankruptcy or receivership within 120 days of August 23, 1989--paragraph 12, and [f) ] that in order to carry out the provisions of the agreement, Spectrum's board of directors would be reconstituted and Pinecrest would be assured voting control through the issuance of preferred stock--paragraphs 9, 10, 11.
 
 
 5
 The consulting agreement of August 30, 1989 was entered into between plaintiff and Spectrum pursuant to the letter agreement. This agreement details plaintiff's obligations, responsibilities and compensation as a consultant for Spectrum. This agreement was executed by Joe Eddy, Executive Vice-President of Spectrum Resources, plaintiff, and defendant Stanhagen on behalf of Pinecrest Group Partnership.
 
 
 6
 (App. 107-08).
 
 
 7
 Pursuant to the letter agreement, Schaff resigned as CEO and defendants assumed control of Spectrum. The financial condition of the company continued to deteriorate, however, and on September 16, 1989, less than one month after the agreements were signed, the Greenup Circuit Court, Greenup County, Kentucky, placed Spectrum in involuntary receivership. Based on the contract provision of the letter agreement, which excused performance by the defendants if the company went into receivership, defendants considered themselves released from any further contractual obligations.
 
 
 8
 Plaintiffs brought this action in the Eastern District of Kentucky on February 27, 1990, charging breach of contract and fraud.[1] They asserted that Pinecrest, contrary to its promise, never intended to invest any money in Spectrum, and that it was defendants' inaction which caused Spectrum to go into receivership. Plaintiffs requested approximately two million dollars in compensatory damages and five million dollars in punitive damages. Defendants answered the complaint on March 19 by moving for dismissal pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs responded by filing an amended complaint, which restated their previous allegations and added an allegation of fraudulent inducement.[2] Later, plaintiffs filed a formal response to the motion to dismiss. Plaintiffs then attempted to proceed with discovery. Defendants objected and obtained a protective order staying the taking of depositions until the motion to dismiss was decided.
 
 
 9
 On June 20, 1990, the district court granted defendants' motion and dismissed plaintiffs' complaint with prejudice.
 
 II.
 
 10
 In granting defendants' motion for dismissal on Rule 12(b)(6) grounds, the district court first concluded that Pinecrest bore no liability under either the consulting or letter agreement for obligations exclusively assumed by Spectrum.
 
 
 11
 The consulting agreement of August 30, 1989 states in its first paragraph that "this consulting agreement is made and entered into ... by and between Spectrum Resources, Inc. ... and Morton Schaff...." Pinecrest was clearly not a party to this agreement and bears no responsibility for its performance.
 
 
 12
 The letter agreement shows that some of the obligations were taken on by the Pinecrest Group and some by Spectrum. Specifically, the financial obligations under paragraphs 2, 3, 4, and 7 are the responsibility of Spectrum while Pinecrest assumed responsibility under paragraphs 5, 6 and 8. Under paragraph 5 the Pinecrest Group agreed to indemnify plaintiffs for certain outstanding debts of Spectrum; under paragraph 6, Pinecrest agreed to "cause Spectrum to terminate or keep payments current with respect to leases with Executive Car Leasing;" and, under paragraph 8, Pinecrest agreed to "cause Spectrum's Board of Directors to ... cause the Company to repay ... loans and advances that" plaintiffs had made to Spectrum. Like the consulting agreement, defendants bear no liability under the letter agreement for the obligation exclusively assumed by Spectrum, i.e. paragraphs 2, 3, 4 and 7.
 
 
 13
 (App. 109-110).
 
 
 14
 Second, the district court held that whatever obligations Pinecrest did assume under the letter agreement were obviated by paragraph 12 of the agreement, which excused performance if Spectrum went into receivership. That paragraph states in pertinent part:
 
 
 15
 No guarantees, assurances or performances will be required from Pinecrest or its Partners, directly or indirectly, if Spectrum ... [is] the subject of an involuntary petition in bankruptcy, receivership or other similar proceedings, within a period of 120 days from the date hereof. Any such action or proceeding shall terminate any and all liability of Pinecrest Partnerships and/or its principals.
 
 
 16
 (App. at 46). The district court took judicial notice of Spectrum going into receivership within the 120-day time period and concluded that Pinecrest's duty to perform was terminated.
 
 
 17
 Finally, the district court concluded that plaintiffs' fraud theory was not legally viable.
 
 
 18
 A. Whether the District Court Improperly Drew Factual Inferences
 
 
 19
 Plaintiffs argue first that the district court could not have concluded that the duty to perform certain obligations lay with Spectrum rather than Pinecrest if the court had not employed inferential reasoning favorable to the party seeking dismissal. In doing so, plaintiffs assert, the court went beyond what is allowed under Rule 12(b)(6).
 
 
 20
 "[W]hen reviewing a 12(b)(6) motion we must accept as true all factual allegations in the complaint." Kerasotes Michigan Theatres, Inc. v. National Amusements, Inc., 854 F.2d 135, 136 (6th Cir.1988). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); see also Hammond v. Baldwin, 866 F.2d 172, 175 (6th Cir.1989).
 
 
 21
 In the present case, the district court dismissed the Schaffs' claims that were predicated on paragraphs 2, 3, 4, and 7 of the letter agreement and under paragraph 3 of the consulting agreement, holding that the obligations included in these paragraphs were the responsibility of Spectrum and not Pinecrest. The plain language of these paragraphs indicates the nature of this agreement. These paragraphs state in pertinent part:
 
 
 22
 2. Spectrum, KOG and I will enter into a consulting agreement, which agreement will be guaranteed by Spectrum at an annual compensation of $96,000 per year, commencing on October 1989 through September 30, 1990.
 
 
 23
 3. I will receive cash payments in the amount of $35,000 from Spectrum within 60 to 90 days of the execution of the Agreements.
 
 
 24
 4. I will receive the following cash payments from Spectrum as soon as practicable....
 
 
 25
 ....
 
 
 26
 7. Spectrum shall pay on a timely basis and Pinecrest Group shall guarantee the balance of the loan to Spectrum and Morton and Barbara Schaff.... Spectrum will also pay the existing balance on a Spectrum American Express Card having a present balance of approximately $22,000, which amount is personally guaranteed by Mr. Morton Schaff.
 
 
 27
 (App. at 44-45) (emphasis added). The district court pointed further to the introductory paragraph of the consulting agreement as being consistent with the obligations of the parties contained in the agreement: "THIS CONSULTING AGREEMENT ... is made and entered into this 30 day of August, 1989 by and between Spectrum Resources, Inc., a Delaware corporation ... and Morton Schaff...." (App. at 48).
 
 
 28
 Each of these contracts was specifically incorporated by the Schaffs in their amended complaint. Moreover, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed.R.Civ.P. 10(c). Finally, Kentucky law states that, when a cause of action is based upon a written contract that is incorporated in the pleadings, the provisions of the contract supersede any contrary allegations in the pleadings. Ingram v. State Property & Bldgs. Comm'n, 309 S.W.2d 169, 172 (Ky.1957).[3] Viewed against this legal backdrop, the district court was correct in examining the plain language of the contract and concluding that there could be no set of facts which supported plaintiffs' claims.
 
 
 29
 Plaintiffs nonetheless suggest that it is the responsibility of the finder of fact to determine the parties' intent in a contract dispute. Plaintiffs argue that it is clear these agreements envisioned circumstances where Pinecrest and Spectrum would essentially merge into one entity with Pinecrest having the post-takeover responsibility for Spectrum. Kentucky law, however, clearly has established that "[t]he intention of the parties to a [written instrument] must be determined from the words used in the instrument. Parol evidence cannot be considered to determine the intention of the parties unless the words used in the instrument are ambiguous." Kentucky-West Virginia Gas Co. v. Browning, 521 S.W.2d 516, 517 (Ky.1975). When a contract is clear and unambiguous on its face, it is a violation of the parol evidence rule to allow introduction of extrinsic evidence concerning the intent of the parties. Porter v. Citizens Fidelity Bank & Trust Co., 554 S.W.2d 397, 399 (Ky.App.1977) (barring introduction of letter written several years after creation of a trust). Further, in cases where there is a dispute about intent, Kentucky leans toward relying on the actual language of the document.
 
 
 30
 [W]hen two intelligent parties have read the contract before signing it, and one thereafter says it meant something different, or was subject to some unexpressed condition, reservation, limitation, proviso, or understanding, but the other says it meant just what it said, no more and no less, it is our opinion that stability and a salutary confidence in the written word requires the instrument itself to prevail.
 
 
 31
 O.P. Link Handle Co. v. Wright, 429 S.W.2d 842, 847 (Ky.1968).
 
 
 32
 In the present case, the language of the contract makes clear that Spectrum is the obligor, not Pinecrest. "[I]t is not the function of the judiciary to change the obligations of a contract which the parties have seen fit to make." Id. (citing 4 S. WILLISTON, A Treatise on the Law of Contracts SEC. 610A (3D ED. 1961)). PLAINTIFFS OFFER NO EVIDENCE THAT THE DISTRICT COURT RELIED ON "INFERENTIAL REASONING" NOR DID ANYTHING BUT APPLY THE LETTER OF THE CONTRACT.T. T.
 
 
 33
 B. The Court's Decision to Take Judicial Notice of the Receivership
 
 
 34
 Unlike the sections of the contract at issue above, paragraphs 5, 6, and 8 of the letter agreement place contractual obligations upon the defendants. Nevertheless, the court determined that any obligation of defendants under these provisions was nullified as a result of Spectrum going into involuntary receivership.
 
 
 35
 Plaintiffs do not contest the existence of the receivership order, nor do they dispute that matters of public record, including other court decisions, may be taken into account when considering a 12(b)(6) motion. Plaintiffs argue, however, that Spectrum would not have gone into receivership but for the failure of defendant to perform its duty; had defendants contributed the financial support as allegedly promised, the company would not have been placed in receivership. Thus, plaintiffs assert, the district court improperly found the receivership order sufficient to establish Pinecrest's affirmative defense without proper consideration of plaintiffs' legal theory. We disagree.
 
 
 36
 Plaintiffs offer only unsubstantiated allegations that defendants have failed to live up to alleged promises of financial support. None of these promises are contained in the contract. Furthermore, any such claims by the Schaffs fail due to the contract's integration clause which stated that "[t]his Consulting Agreement and the Letter Agreement contains all the agreement and understanding between the parties hereto, and no oral agreements or written correspondence shall be held to effect the provisions thereof." (App. 52).
 
 
 37
 There is no support for plaintiffs' claims that the district court did anything more than take judicial notice of a prior state proceeding and apply the appropriate contract provisions.
 
 
 38
 Plaintiffs also claim that the district court converted their 12(b)(6) motion sua sponte into one for summary judgment. A court's decision to take judicial notice of other legal proceedings does not automatically turn a Rule 12(b)(6) motion into one for summary judgment. However, we find that if we were to review plaintiffs' claim under a Rule 56 standard we would conclude that plaintiffs have failed to demonstrate that a summary judgment was inappropriate.
 
 C. The Claim for Fraudulent Inducement
 
 39
 Plaintiffs' final claim is that the district court erred in concluding that their fraudulent inducement claim was not a viable legal theory. The district court stated:
 
 
 40
 Under Count IV of the amended complaint, plaintiffs allege that defendants fraudulently induced Mr. Schaff to resign his position as CEO of Spectrum by making false representations and by entering into the two written agreements with intent not to abide by them. Whether or not Mr. Schaff was fraudulently induced to enter into the agreements is immaterial--neither plaintiff's injuries nor defendants' refusal to perform were predicated on fraud. Plaintiff's injuries resulted from defendants' refusal to perform after Spectrum was placed into receivership, a refusal that justly finds support in paragraph 12 of the letter agreement.
 
 
 41
 (App. at 111). We agree.
 
 
 42
 Under Kentucky law, the requirements for a claim for fraudulent inducement are a representation made as a statement of fact which is untrue, with the intent to deceive and which is acted upon to the detriment of the defrauded party. See Wahba v. Don Carlett Motors, Inc., 573 S.W.2d 357, 359 (Ky.App.1978). The burden is on the party asserting fraud to establish it by clear and convincing evidence. Sanford Constr. Co. v. S & M Contractors, Inc., 443 S.W.2d 227 (Ky.1969). An essential element for such a claim is establishing causal connection between any misrepresentation and the resulting injury. See Godley v. Piedmont Land Sales, Inc., 505 F.Supp. 397, 402 (E.D.Ky.1978), aff'd, 640 F.2d 831 (6th Cir.1981).
 
 
 43
 In the present case, defendant's non-performance--as well as any resulting injuries to plaintiffs--were not due to any fraudulent action or inducement but, rather, to defendants' justifiable reliance on paragraph 12 of the letter agreement that explicitly released them from any obligation of performance if a receivership occurred. As discussed above, plaintiffs' argument that additional promises were made, but not incorporated in the agreement, are barred by the integration clause of the contract.[4]
 
 
 44
 AFFIRMED.
 
 
 45
 DAVID A. NELSON, Circuit Judge, concurring and dissenting in part.
 
 
 46
 I concur in all but Part II C of the court's opinion. As to that part, which deals with the claim for fraudulent inducement, I would reverse the judgment of the district court.
 
 
 47
 It may well be true that the defendants made no false representations of a kind capable of suspending the operation of the integration clause of the contract. It is certainly true that the plaintiffs have provided no evidence of such representations. Bearing in mind, however, that this case was disposed of on a demurrer to the complaint, rather than by summary judgment, I would remand the case to let the district court see whether the plaintiffs can in fact produce evidence of fraudulent inducement capable of supporting a recovery of damages.
 
 
 
 [1]
 Barbara Schaff is a plaintiff in this action as a result of her financial involvement with Spectrum, described in the letter agreement
 
 
 [2]
 The amended complaint included allegations that Pinecrest made representations regarding actions it would take to return the company to financial strength, including investment of over $2,000,000 in the company, knowing misrepresentation by Pinecrest that these representations were false, and also alleged general mismanagement of the company
 
 
 [3]
 The parties had concluded that the two agreements were to be governed by Kentucky law
 
 
 [4]
 While some representations may be so "false and fraudulent" as to prevent a merger into the contract, see, e.g., Bryant v. Troutman, 287 S.W.2d 918 (Ky.1956), plaintiffs do not provide evidence of such an extreme situation here